## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| CARRIE BRAUN, | ) | CASE NO. 5:12cv1635 |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | JUDGE SARA LIOI |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| ULTIMATE JETCHARTERS, INC., et al., | ) | ORDER |
| | ) | |
| DEFENDANTS. | ) | |

Before the Court is a motion to dismiss filed by defendants Ultimate Jetcharters, Inc. ("UJC"), Bob Rossi ("Rossi"), and Floyd Wells ("Wells") (collectively "defendants"). (Doc. No. 12.) Plaintiff Carrie Braun ("plaintiff" or "Braun") has filed a brief in opposition (Doc. No. 15), to which defendants have replied (Doc. No. 16). For the reasons discussed below, the Court construes defendants' motion to dismiss as one for judgment on the pleadings and the same is **GRANTED in part**.

## I.    BACKGROUND

On June 24, 2012, Braun filed a complaint alleging that defendants subjected her to gender harassment and wrongfully terminated her employment in retaliation for her complaints about that harassment. (Doc. No. 1 at 1.) The complaint alleges the following facts, which the Court takes as true for purposes of defendants' motion.

In April 21, 2011, Braun began working as UJC's only female pilot. Soon after Braun began her employment with UJC, "she started experiencing various acts of discrimination and defamatory comments made about her concerning her gender and personality." (*Id*. at 3.)

In or around October 2011, Braun had an argument with Rossi, during which Rossi "verbally assaulted," threatened, and screamed at Braun for about twenty minutes. Braun

immediately reported the incident to her supervisor, Dave Parsons ("Parsons"). (*Id.*) Thereafter, on October 7, 2011, Rossi yelled at Braun "for the way she was performing her job." (*Id.* at 4.)

Between October 2011 and March 2012, Rossi and Wells "continually made defamatory statements about [Braun][,]" speaking "to most, if not all of the captains [Braun] flew with and [stating falsely] that she was 'insubordinate, unprofessional, young, wild' and engaged in 'crazy actions when off the clock.'" (*Id.*) Further, Wells and Rossi made comments about the fact that she was female and how her actions did not conform to her gender, and weren't acceptable for a woman. (*Id.*)

On or around February 20, 2012, an employee of another flight company, Signature Flight Support, approached Braun "and told her that Rossi was telling people she was 'unprofessional and insubordinate.'" (*Id.*) At or near this same time, several male UJC's employees confronted Braun and "told her that they would rather be on the road with any other male pilot, not because she wasn't good at her job, but because she was female." (*Id.*) This made Braun "feel extremely uncomfortable." (*Id.*) She was also threatened with termination. After several months, Braun complained about these "discriminatory, defamatory, and harassing comments" to her supervisors. (*Id.*)

On or about March 12, 2012, a week after she formally complained to her supervisors, UJC terminated Braun's employment. Braun was told that she was being terminated "because she was a female in the cockpit and that being female posed a problem for other employees[,]" and because she had allegedly sent "inappropriate emails" that did not further the

company's image. (*Id*. at 5.) On March 13, 2012, plaintiff filed a sex discrimination charge with the Equal Employment Opportunity Commission ("EEOC charge"). (Doc. No. 14-1.)[1]

The complaint avers that Braun "was treated differently because of her gender" and that UJC "has a pattern of discrimination towards women." (*Id*.) Further, the complaint alleges that male employees were treated more favorably and were not reprimanded for conduct similar to Braun's alleged after-hours conduct. The complaint sets forth federal claims against defendants for hostile work environment and gender discrimination (Count I) and wrongful termination/retaliation (Count II) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq., as well as state law claims for hostile work environment gender discrimination (Count III) and wrongful termination/retaliation (Count IV) in violation of Ohio Rev. Code § 4112.02, negligent hiring, retention, and/or supervision (Count V),  wrongful termination in violation of public policy (Count VI), negligence (Count VII),  intentional infliction of emotional distress ("IIED") (Count VIII), defamation (second Count VIII), tortious interference with actual and prospective business relations (Count IX), and assault (Count X). Plaintiff seeks compensatory and punitive damages.

---

[1] A copy of plaintiff's EEOC charge is attached as an exhibit to defendants' motion. Although, "[a]ssessment of the facial sufficiency of the complaint must ordinarily be undertaken without resort to matters outside the pleadings," *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011) (citation omitted), courts may consider "public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies." *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999) (citations omitted). Here, the Court may properly take judicial notice of plaintiff's EEOC filings without converting defendants' motion into one for summary judgment. *J.P. Silverton Indus. L.P. v. Sohm,* 243 F. App'x 82, 87 (6th Cir. 2007) ("Under the rule in *Jackson,* the district court would have been permitted to dispose of [defendant's] motion under Rule 12(b)(6) and still consider the attached [public] records.")

II.     LAW & ANALYSIS

A.  Timeliness of Defendant's Motion

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for a defendant to move for dismissal of a complaint for failure to state a claim upon which relief may be granted. However, a Rule 12(b) motion must be filed prior to the filing of an answer. Fed. R. Civ. P. 12(b). Defendants filed an answer in this matter on July 16, 2012 (Doc. No. 4) and moved to dismiss the complaint on August 22, 2012. Therefore, defendants' motion, to the extent it seeks relief under Rule 12(b)(6), is untimely. *Fite v. Comtide Nashville, LLC*, 686 F. Supp. 2d 735, 747 (M.D. Tenn. 2010). This, however, is not fatal to defendants' motion.

The Sixth Circuit has held that, "as a matter of motions practice, such a motion may be properly considered as one for judgment on the pleadings under Fed. R. Civ. P. 12(c), and evaluated, nonetheless, under the standards for dismissal under Rule 12(b)(6)." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 n. 1 (6th Cir. 1988) (citing *Republic Steel Corp. v. Pa. Eng'g Corp.*, 785 F.2d 174, 182 (7th Cir. 1986); *Amersbach v. City of Cleveland*, 598 F.2d 1033, 1038 (6th Cir. 1979); 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1367 at 688–89 (1969); Fed. R. Civ. P. 12(h)(2)).

> The only difference between Rule 12(c) and Rule 12(b)(6) is the timing of the motion to dismiss. A motion to dismiss under Rule 12(b)(6) requires the moving party to request judgment in a pre-answer motion or in an answer. A motion for judgment on the pleadings under Rule 12(c) may be submitted after the defendants filed an answer.

*Hunter v. Ohio Veterans Home*, 272 F. Supp. 2d 692, 694 (N.D. Ohio 2003). *See also, Paul v. McGhee*, 577 F. Supp. 460, 462 (E.D. Tenn. 1983) (construing untimely motion to dismiss as

4

motion for judgment on pleadings) (citing Fed. R. Civ. P. 12(h)(2); WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1361.)

Moreover, under Fed. R. Civ. P. 12(h) the defense of failure to state a claim upon which relief can be granted is not subject to waiver and may be raised in a responsive pleading, a motion for judgment on the pleadings, or at trial. Here, defendants expressly asserted this defense in their answer, and "courts have allowed untimely motions [to dismiss] if the defense has been previously included in the answer." *Stein v. Kent State Univ. Bd. of Trs.*, 994 F. Supp. 898, 902 (N.D. Ohio 1998) *aff'd sub nom. Stein v. Kent State Univ.*, 181 F.3d 103 (6th Cir. 1999) (defendants could move to dismiss complaint after filing answer preserving defense of failure to state a claim upon which relief could be granted) (citing 5A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1361 (1990)).

Accordingly, for the foregoing reasons, the Court will consider defendants' motion to dismiss as a motion for judgment on the pleadings under Rule 12(c).

**B.  Standard of Review Under Rule 12(c)**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[,]" Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 44, 47 (1957). Although this pleading standard does not require great detail, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing authorities). In other words, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief."

*Id.* at 556, n. 3 (criticizing the *Twombly* dissent's assertion that the pleading standard of Rule 8 "does not require, or even invite, the pleading of facts").

Under Rule 12(c), a party may move for judgment on the pleadings any time after the pleadings are closed but early enough not to delay trial. Fed. R. Civ. P. 12(c). The standard of review for a motion for judgment on the pleadings is the same as for a motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001) (citing *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. The district court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. Ohio,* 193 F.3d 389, 400 (6th Cir.1999) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). "The motion is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991) (citation omitted).

**C.  Plaintiff's Discrimination Claims**

Plaintiff frames her discrimination claims in terms of both federal and Ohio law. For such claims in Ohio, "federal case law interpreting Title VII of the Civil Rights Act of 1964, [42 U.S.C. § ] 2000(e) *et seq*., . . . is generally applicable to cases involving alleged violations of R.C. Chapter 4112[,]" *Plumbers & Steamfitters Joint Apprenticeship Comm'n v. Ohio Civil Rights Comm'n,* 66 Ohio St. 2d 192 (1981), with but one notable exception regarding individual liability, discussed *infra*. Thus, as far as the parties' respective arguments apply equally to plaintiff's federal and state discrimination claims, the Court will consider these claims together.

*1.  Individual Liability under Title VII and Ohio Rev. Code § 4112.02*

Defendants move to dismiss plaintiff's gender discrimination claims against Rossi and Wells, arguing that individual employees cannot be held liable under either Title VII or Ohio Rev. Code § 4112.02. In response, plaintiff asserts that the complaint seeks to hold Rossi and Wells liable under Ohio law only, not Title VII, and that in contradistinction to Title VII claims, Ohio Rev. Code Chapter 4112 permits individual liability.

A majority of circuit courts, including the Sixth Circuit, have held that an employee/supervisor, who does not otherwise qualify as an "employer," cannot be held individually liable under Title VII and similar statutory schemes. *See Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 405 (6th Cir. 1997) (finding that individual liability is prohibited under Title VII); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995) (holding that "individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII"); *E.E.O.C v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1282 (7th Cir. 1995) (holding that "individuals who do not otherwise meet the statutory definition of 'employer' cannot be liable

7

under the ADA"); *Lenhardt v. Basic Inst. of Tech. Inc.*, 55 F.3d 377, 381 (8th Cir. 1995) (finding that supervisors and managers are not subject to individual liability); *Gary v. Long*, 59 F.3d 1391, 1399 (D.C. Cir.), *cert. denied,* 516 U.S. 1011 (1995) (holding that Title VII does not impose individual liability on supervisory employees). Therefore, to the extent the complaint can be read to allege Title VII claims against "defendants" collectively, the law is clear that plaintiff cannot maintain any Title VII claims against defendants Rossi and Wells.

Under Ohio law, however, an individual supervisor or manager may be liable for employment discrimination. Ohio Rev. Code § 4112; *Genaro v. Cent. Transport, Inc.*, 84 Ohio St. 3d 293, 300 (1999) ("a supervisor/manager may be held jointly and/or severally liable with her/his employer for discriminatory conduct of the supervisor/manager in violation of R.C. Chapter 4112."); *Cheek v. Indus. Powder Coatings, Inc.*, 84 Ohio St. 3d 534, 706 N.E.2d 323 (1999) (holding that "an individual employee, not otherwise deemed to be an 'employer' under the statute, may be individually liable for alleged violations of the employment discrimination provisions of the Ohio Civil Rights Act, Ohio Rev. Code §§ 4112.01(A)(2), 4112.02(A) & 4112.99"). However, "Ohio courts have refused to extend *Genaro* to non-supervisory employees." *Minnich v. Cooper Farms, Inc.*, 39 F. App'x 289, 296 (6th Cir. 2002). Accordingly, individual defendants Rossi and Wells may be held jointly and/or severally liable with UJC for their alleged discriminatory acts under Ohio law only if they were plaintiff's supervisors or managers.

Here, although plaintiff indicates in her opposition brief that Rossi and Wells are supervisors and/or managers at UJC, her complaint does not specifically allege this to be the case. Nevertheless, it can be reasonably inferred from the complaint and plaintiff's EEOC

charge, that these defendants exercised managerial authority over Braun. Moreover, "[t]he moving party has the burden of proving that no claim exists[,]" *Amway Distribs. Benefits Ass'n v. Fed. Ins. Co.*, 990 F. Supp. 936, 940 (W.D. Mich. 1997), and defendants offer no reply to plaintiff's argument that Rossi and Wells may be held liable as supervisors/managers under Ohio law. Accordingly, defendants have not demonstrated that they are entitled to judgment on the pleadings with respect to plaintiff's state law discrimination claims on these grounds.

> 2. *Hostile Work Environment Sex-Based Gender Discrimination in Employment*

Counts I and III of the complaint allege that plaintiff was subjected to discriminatory harassment based on her gender and her failure to conform to defendants' gender stereotypes, and that UJC failed to take corrective action against her harassers and, instead, terminated her employment when she complained about this harassment.

Defendants move to dismiss these counts on the grounds that plaintiff has failed to state sufficient facts to support either a hostile work environment claim or a gender discrimination claim. Defendants contend that plaintiff has failed to plead any facts from which it can be plausibly inferred that she was subjected to harassment based on her gender or that the acts alleged were severe or pervasive enough to constitute a hostile work environment. They argue that plaintiff must elaborate on the nature of the harassment with specific details regarding the "who, what, where, when, how, or why." (Doc. No. 12-1 at 109.) Similarly, defendants contend that plaintiff has not alleged sufficient facts to show that she was terminated because of her gender. Defendants assert that, to support an inference of discrimination, plaintiff must plead specific facts to show that she was, in all respects, similarly situated to the male employees who were allegedly treated differently. Defendants, however, do not cite any Sixth Circuit authority

holding that a hostile work environment or gender discrimination claim should be dismissed based upon the failure to plead such specific facts.

Title VII provides that "it shall be an unlawful employment practice for an employer . . . to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e–2(a). A plaintiff proves a violation of Title VII either by direct evidence of discrimination or by following the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). However, in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002), the Supreme Court held that, in the discrimination context, it was not necessary for a plaintiff to allege all the elements of a *prima facie* case of discrimination under *McDonnell Douglas*, which "is an evidentiary standard, not a pleading requirement." *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012) (citing *Swierkiewicz*, 534 U.S. at 511); *Lindsay v. Yates*, 498 F.3d 434, 439-40 (6th Cir. 2007); *Jackson v. Crosset Co.*, 33 F. App'x 761, 762 (6th Cir. 2002)).

The Supreme Court explained that the precise requirements of a *prima facie* case can vary depending on the context and, before discovery has unearthed the relevant facts and evidence, it may be difficult to define the appropriate formulation. *Swierkiewicz*, 534 U.S. at 512. Significantly, the Supreme Court identified the possibility that discovery may produce direct evidence of discrimination, rendering the *McDonnell Douglas* burden-shifting framework inapplicable to a plaintiff's claims. *Id.* at 511–12. Thus, the complaint must contain only "'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Swierkiewicz*, 534 U.S. at 508 (quoting Fed. R. Civ. P. 8(a)(2)); *id.* at 514 (concluding that a complaint alleging national origin discrimination was sufficient because it alleged that the

10

plaintiff had been terminated because of his national origin, giving the relevant dates and details of the termination, including the ages and nationalities of some of the persons involved in his termination).

   The Sixth Circuit recently elaborated on this standard, explaining that *Iqbal* and *Twombly* did not alter the holding in *Swierkiewicz*, but emphasizing that the *Iqbal* and *Twombly* plausibility standard for assessing whether a complaint's factual allegations support its legal conclusions applies to causation in discrimination claims.

> Thus, although the . . . Complaint need not present 'detailed factual allegations,' it must allege sufficient 'factual content' from which a court, informed by its 'judicial experience and common sense,' could 'draw the reasonable inference,' *Iqbal,* 556 U.S. at 678, 679, 129 S. Ct. 1937, that [defendant] discriminated against [plaintiff] with respect to her compensation, terms, conditions, or privileges of employment, *because of* her race, color, religion, sex, or national origin. . . . According to the Supreme Court, 'plausibility' occupies that wide space between 'possibility' and 'probability.' *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937. If a reasonable court can draw the necessary inference from the factual material stated in the complaint, the plausibility standard has been satisfied.

*Keys*, 684 F.3d at 609-10 (holding complaint stated a plausible race discrimination claim where it detailed specific events in which plaintiff was treated differently than white managers, identified key supervisors and other relevant persons by race and name or company title, and alleged plaintiff received specific adverse employment actions despite her satisfactory job performance) (internal quotation marks and citations omitted) (emphasis in original).[2] *See also, Perry v. Se. Boll Weevil Eradication Found.*, 154 F. App'x 467, 472 (6th Cir. 2005) ("although [the courts] do not require . . . plaintiffs at the 12(b)(6) stage to present *evidence* on the elements of their claims, their complaint must nonetheless 'contain either direct or inferential allegations

---

[2] Although *Keys* addressed a claim under 42 U.S.C. § 1981, the federal courts "review § 1981 claims under the same standard as Title VII claims." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 512 (6th Cir. 2009).

respecting all the material elements to sustain a recovery under some viable legal theory . . . conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'") (quoting *Mezibov v. Allen,* 411 F.3d 712 (6th Cir. 2005)) (emphasis added). With this in mind, the issue for the Court is whether Braun's complaint contains adequate factual allegations to state plausible claims for hostile work environment and gender discrimination.

To make out a hostile work environment claim,  plaintiff must demonstrate: (1) she was a member of a protected class; (2) she was subject to unwelcome sexual harassment; (3) the harassment complained of was based on sex; (4) the charged sexual harassment created a hostile work environment; and (5) the existence of employer liability. *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 762 (6th Cir. 2006) (citation omitted). "Harassment creates a hostile or abusive work environment when it is 'sufficiently severe or pervasive to alter the conditions of the victim's employment . . . .'" *Hickman v. Laskodi*, 45 F. App'x 451, 454 (6th Cir. 2002) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks omitted)). The Supreme Court has "made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment." *Faragher v. Boca Raton*, 524 U.S. 775, 788 (1998). Conduct that is "merely offensive" is insufficient to support a hostile work environment claim. *Harris*, 510 U.S. at 21. To determine "whether an actionable hostile work environment claim exists, [the courts] look to 'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) (quoting *Harris,* 510 U.S. at 23).

12

Additionally, courts draw a distinction between harassment and harassment that is based on a plaintiff's protected status. *Howard v. Bd. of Educ. of Memphis City Schs.*, 70 F. App'x 272, 282 (6th Cir. 2003) (holding only incidents that occurred because of a plaintiff's gender are properly considered in the context of a claim of hostile work environment).

Here, although this is a close case, the Court finds that Braun's complaint adequately pleads a cause of action for employment discrimination by reason of an abusive or hostile work environment. Plaintiff alleges that soon after she began working for UJC as its only female pilot, "she started experiencing various acts of discrimination and defamatory comments made about her concerning her gender and personality," appearance, demeanor, and work ethic, that these remarks were continuous from October 2011 through March 2012, that Rossi and Wells commented on "how her actions did not conform to her gender, and weren't acceptable for a woman," and that she complained about this conduct as early as October 2011. She goes on to alleged incidents in support of her claims, indicating that several male employees approached her and told her that they would rather not work with her, not because she wasn't good at her job, but because she was female. Further, she alleges that Rossi commented that she was insubordinate, unprofessional, young, wild, and engaged in crazy actions off the clock, but "there were several other males who were treated more favorably, and were not reprimanded for similar conduct."[3] Finally, she alleges that when she was terminated, she was told, "being a female posed a problem for other employees." Although the specifics as to when the incidents occurred are largely absent, the Court finds these allegations sufficiently demonstrate an entitlement to relief and give

---

[3] Contrary to defendants' assertions, that these statements were not sexually suggestive in nature is not fatal to plaintiff's claims. The Sixth Circuit has made clear, "that the conduct underlying a sexual harassment claim need not be overtly sexual in nature. *Any* unequal treatment of an employee *that would not occur but for the employee's gender* may, if sufficiently severe or pervasive under the *Harris* standard, constitute a hostile environment in violation of Title VII." *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 565 (6th Cir. 1999) (emphasis in original).

the defendants fair notice of plaintiff's claims for hostile work environment and the grounds upon which those claims rest. *See Swierkiewicz*, 534 U.S. at 512.

To establish a *prima facie* case of gender discrimination, plaintiff must show: "(1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination." *Swierkiewicz.,* 534 U.S. at 510. Defendants argue that plaintiff has not met the fourth prong of the *prima facie* case because she has not pleaded facts to show that she was similarly situated in all respects to other male employees who were not disciplined or were treated better for the same or similar conduct. However, as discussed above, at the motion to dismiss stage, plaintiff need not prove a *prima facie* case. Especially, where as is the case here, plaintiff has alleged direct evidence of discrimination; namely that when she was fired from her job as a pilot, she was told it was because she was a "female in the cockpit and that being female posed a problem for other employees." Plaintiff has thus alleged a viable gender discrimination claim and is not required, at this stage, to establish an inference of discrimination based on defendants' treatment of similarly situated male employees.

Accordingly, defendants' motion to dismiss plaintiff's hostile work environment and gender discrimination claims is denied.

### 3. Retaliation

Counts II and IV of the complaint allege that defendants wrongfully terminated plaintiff's employment in retaliation for her complaints regarding Rossi's and Wells's alleged harassment. Defendants move to dismiss plaintiff's retaliation claims on the basis that she has not pleaded sufficient factual matter showing a causal relationship between her termination and

14

her protected conduct, and because she failed to exhaust her administrative remedies when she failed to check the box for "Retaliation" on her EEOC charge.

Because the failure to exhaust administrative remedies is a jurisdictional matter, the Court will address this argument first. *Quadri v. Ohio Dept. of Transp.*, No. 2:10–CV–733, 2011 WL 2174983, *6 (S.D. Ohio June 3, 2011) ("It is beyond dispute that a charge of discrimination with the EEOC is a jurisdictional prerequisite to filing a civil action in this Court.") (citing *Strouss v. Mich. Dep't of Corr.*, 250 F.3d 336, 342 (6th Cir. 2001); *Vinson v. Ford Motor Co.*, 806 F.2d 686, 688 (6th Cir. 1986)). At the outset, however, it should be noted that, unlike Title VII, Ohio law does not require a discrimination claimant to exhaust her administrative remedies before filing a civil suit. *Harrison v. City of Akron*, 43 F. App'x 903, 905 (6th Cir. 2002) (citing Ohio Rev. Code § 4112.99; *Elek v. Huntington Nat'l Bank*, 60 Ohio St. 3d 135 (1991); *Carney v. Cleveland Heights-Univ. Heights City Sch. Dist.*, 143 Ohio App. 3d 415, (Ohio Ct. App. 2001)).

Plaintiff concedes that she only checked the box for sex discrimination on her EEOC charge. But she argues that under the Sixth Circuit's "expected scope of the investigation test," she is not precluded from bringing her retaliation claim because the facts alleged in her charge would have prompted the EEOC to investigate her uncharged claim of retaliation. The Court disagrees.

Pursuant to the expected scope of investigation test, the Sixth Circuit has recognized that "where facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Davis v. Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998).

Therefore, although the failure to check a box on a charge form is not dispositive of whether plaintiff exhausted her administrative remedies, *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004), she must still have alleged "sufficient facts in [her] EEOC Complaint to put the EEOC on notice of [her] retaliation claim[.] . . . ." *Id.*

In *Dixon,* the Sixth Circuit reversed the district court's judgment that the plaintiff had failed to exhaust his administrative remedies on his retaliation claim. In his EEOC complaint, Dixon expressly alleged that his FBI supervisor discriminated against him because he was black. 392 F.3d at 217. Like Braun, Dixon did not check the appropriate box to show that he intended to assert a retaliation claim, nor did he use the word "retaliation." *Id.* at 217-18. The Sixth Circuit nonetheless concluded that "[a]pplying the expected scope of investigation test," Dixon's administrative complaint was "sufficient to put the EEOC on notice that Dixon perceived himself to be a victim of retaliation, in addition to race discrimination[,]" where he alleged that his job duties were curtailed after he complained about racial discrimination and harassment by his supervisor *Id.* at 217-18. Thus, Dixon's allegations were sufficient to exhaust his administrative remedies on his retaliation claim.

Unlike in *Dixon*, however, Braun's EEOC charge is devoid of any allegation that she complained about a gender-based hostile work environment or discrimination prior to her discharge.[4] Rather, her charge can only be read to allege gender discrimination and

---

[4] Braun's EEOC charge alleges, in relevant part, as follows:

> On or about October 3, 2011, Captain bob *sic* Rossi (age 65) and I had a disagreement on the ground in the airplane that resulted in him verbally assaulting me, threatening me and violently screaming at me for 20 minutes. Mr. David Parsons, Director of Operations late 30's and who hired me told Captain Rossi to apologize and he did so on October 5, 2011. I was let go on 03/12/2012 supposedly for sending an inappropriate e-mail. I was also told that my conduct and activities outside of work not pertaining to my job were inappropriate. I was sanctioned for using 2 inch heels which was the proper attire; this was due to complaints from Bob Rossi and Captain

16

discriminatory discharge. Consequently, her allegations were not sufficient to exhaust her administrative remedies as to her Title VII retaliation claim and, therefore, that claim is dismissed.

Turning to plaintiff's state law retaliation claim and defendants' remaining argument, the Court concludes that plaintiff has sufficiently plead a retaliation claim under § 4112.02. Again, pursuant to *Swierkiewicz*, at this stage of the litigation, plaintiff is not required to establish a *prima facie* case of retaliation, and must only plead either direct or inferential allegations respecting all the material elements of a retaliation claim to sustain a recovery under some viable legal theory. *Perry*, 154 F. App'x at 472 (citation omitted).

To state a claim of retaliation under Ohio law, Braun must plead and prove that: (1) she engaged in a protected activity; (2) her engagement in that protected activity was known to her employer; (3) her employer, thereafter, took an adverse employment action against her; and (4) a casual link exists between her engagement in the protected activity and the adverse employment action. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). To establish a causal connection, Braun must offer direct evidence of retaliation, or knowledge coupled with closeness in time that creates an inference of causation. *Nguyen,* 229 F.3d at 566 (citing *Parnell v. West,* No. 95-2131, 1997 WL 271751, *2 (6th Cir. 1997)). The Sixth Circuit has stated, "there may be circumstances where evidence of temporal proximity alone would be sufficient to

---

Bert Wells who created a hostile work environment. I am well aware that Joe McGuire, mid 60's, Director of Safety, was found drunk and naked in his hotel hallway and nothing was done to him; yet I did nothing wrong and I was discharged. I have witnesses to these actions. Other young male pilots have bumped heads with Captain Rossi and Captain Wells, but are still employed. I was told that I was terminated because 'I am a female in the cockpit and that being a female I offended Bob and Bert[.]'

(Doc. No. 14-1 at 126).

support that inference [of causation]" when the proximity of time is rather short. *Nguyen,* 229 F.3d at 567. "'[P]revious cases that have permitted a *prima facie* case to be made based on the proximity of time have all been short periods of time, usually less than six months.'" *See DiCarlo v. Potter,* 358 F.3d 408, 421 (6th Cir. 2004) (*quoting Parnell*, 1997 WL 271751, at *3) (proceedings to terminate employee were initiated thirteen days after he filed a complaint with EEOC against his supervisor).

Here, accepting that the allegations in Braun's complaint as true, as the Court must, she has pleaded facts sufficient to make out a retaliation claim under state law. First, she complained to her supervisors after she claims she endured months of discriminatory, defamatory, and harassing conduct based on Rossi's and Wells's gender stereotypes as to how women should act and appear. Ohio Rev. Code § 4112.02(I) expressly protects an employee who opposes a hostile work environment.[5] Second, she made the complaints directly to her supervisors. Third, UJC terminated her employment. Finally, her termination occurred just one week after her formal complaint and was accompanied by a statement that she was being terminated *because her gender posed a problem for other employees*. Accordingly, plaintiff has adequately pleaded her state law retaliation claim and defendants' motion to dismiss that claim is denied.

---

[5] Ohio Rev. Code § 4112.02 provides that it is unlawful:

> For any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code.

**D.  Plaintiff's State Law Tort Claims**

      *1.  Negligent Hiring, Retention, and/or Supervision*

Count V of the complaint alleges that UJC was negligent in hiring, retaining, and/or supervising its agents and/or employees who discriminated against, and engaged in tortious conduct toward, plaintiff. UJC argues that this claim should be dismissed because plaintiff has failed to allege sufficient factual matter in support. The Court agrees.

In Ohio, the elements of a claim for negligent hiring, supervision, and retention are: "(1) the existence of an employment relationship, (2) the employee's incompetence, (3) the employer's knowledge of the employee's incompetence, (4) the employee's act or omission causing the plaintiff's injuries, and (5) a causal link between the employer's negligence in hiring, supervising, and retaining and the plaintiff's injuries." *Lehrner v. Safeco Ins./Am. States Ins. Co.*, 171 Ohio App. 3d 570, 583 (Ohio Ct. App. 2007); *see also Strock v. Pressnell*, 38 Ohio St. 3d 207, 217 (1988).

It is undisputed that Rossi and Wells were employees of UJC. However, plaintiff has not alleged specific facts that demonstrate that Rossi or Wells, or any other employee/supervisor, were not qualified to hire into their respective positions or were improperly trained, or that UJC was negligent in either causing or failing to correct their misconduct. Instead, the complaint conclusorily alleges that UJC had "a pattern of discrimination towards women," and failed to exercise ordinary care to prevent the alleged discriminatory and tortious conduct toward plaintiff. Even if the complaint contained facts to support these legal conclusions, and it does not, plaintiff has failed to state a claim for negligent hiring, retention, or supervision against UJC and defendants' are entitled to dismissal of this claim. *See Snyder v.*

*Guardian Auto. Prods.*, *Inc.*, 288 F. Supp. 2d 868, 875 (N.D. Ohio 2003) (dismissing negligent hiring and supervision claim where complaint did not allege supervisors' incompetence or employer's actual or constructive knowledge of any supervisor incompetence).

> 2.  *Wrongful Termination in Violation of Public Policy*

Count VI of the complaint alleges that UJC terminated Braun in violation of a clear public policy against workplace harassment based on gender roles or stereotypes. To state a claim of wrongful discharge in violation of public policy under Ohio common law, a plaintiff must show that:

> (1) a 'clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law'; (2) in general, 'dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy'; (3) the 'plaintiff's dismissal was motivated by conduct related to the public policy'; and (4) the employer did not have a justifiable 'legitimate business justification for the dismissal.'

*Carrasco v. NOAMTC Inc.*, 124 F. App'x 297, 304 (6th Cir. 2004) (quoting *Wiles v. Medina Auto Parts,* 96 Ohio St. 3d 240, 529-30 (2002)). Defendants argue, and plaintiff concedes, however, that Title VII and Ohio Rev. Code Chapter 4112 provide an adequate remedy for plaintiff's wrongful termination claims, thus plaintiff cannot prove the second prong of the *Wiles* test.[6] *See id.* ("to prove the second prong of the above inquiry the plaintiff must show that there is no other recourse or remedy available . . . 'there is no need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects

---

[6] In her opposition brief, plaintiff argued that if the Court dismissed her retaliation claims, she should be permitted to maintain her Ohio public policy claim in the alternative, lest she be left without a remedy. However, whether or not plaintiff's retaliation claims survived dismissal is not the relevant inquiry, rather the issue is whether she *could* have successfully brought her claims pursuant to Title VII and § 4112.02. Here, plaintiff's Title VII claim failed because she did not exhaust her administrative remedies, not because Title VII does not provide a remedy for the relief sought by plaintiff.

society's interests.'") (quoting *Wiles,* 96 Ohio St. 3d at 531). Accordingly, plaintiff's common

law claim for wrongful discharge in violation of public policy is dismissed.

### 3.  Negligence

Count VII of the complaint alleges that defendants, either directly or indirectly,

through their agents and/or employees, negligently caused plaintiff's injuries. The parties agree

that, in this context, a claim of negligence against an employer exists "if the employer, in the

exercise of reasonable care, should have known of an employee's reputation for sexual

harassment and that it was foreseeable that the employee would engage in sexual harassment of a

fellow employee but he was continued in his employment." *Griswold v. Fresenius USA, Inc.*,

978 F. Supp. 718, 734 (N.D. Ohio 1997) (*quoting Kerans v. Porter Paint Co.*, 61 Ohio St. 3d

486, 492 (1991)). The parties dispute, however, whether plaintiff has pleaded sufficient facts to

demonstrate that UJC's employees had a past history for sexual harassment and that it was

foreseeable that such employees would continue to engage in sexually harassing behavior.

The Sixth Circuit has observed that while an "Ohio common law sexual

harassment claim requires [a] . . . showing of a 'past history of sexual harassment about which

the employer knew or should have known,' . . . Ohio courts have failed to reach a precise

definition of 'past history.'" *Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 277-78

(6th Cir. 2009) (quoting *McCombs v. Meijer, Inc.,* 395 F.3d 346, 354 (6th Cir. 2005); citing

*Kerans*, 61 Ohio St. 3d at 486)). The court noted, however, "in the main, the elements of the

claim are identical to those of a Title VII hostile work environment claim." *Id.* at 278. Because

the Court has already determined that plaintiff has pleaded sufficient facts to support a Title VII

hostile work environment claim, *supra*, the Court finds that those facts also support a claim for

failing to provide a safe work environment free from sexual harassment under *Kerans*, *supra*. Accordingly, defendants' motion to dismiss plaintiff's negligence claim is denied.

### 4. IIED

Count VIII of the complaint alleges that defendants, directly and/or vicariously, are liable for IIED. To establish a claim for IIED, a plaintiff must prove, *inter alia,* that defendants' conduct was "so extreme and outrageous" as to go "beyond all possible bounds of decency" and was such that it can be considered "utterly intolerable in a civilized community," and that as a consequence of that conduct the plaintiff suffered severe and debilitating mental anguish. *Yeager v. Local Union 20*, 6 Ohio St. 3d 369, 374-75 (1983); *Ashcroft v. Mount Sinai Medical Ctr.*, 68 Ohio App. 3d 359, 366 (Ohio Ct. App. 1990). Defendants move to dismiss this claim on the grounds that plaintiff's allegations of improper conduct fall short of the extreme and outrageous conduct necessary for the tort of intentional infliction of emotional distress. The Court agrees.

The "outrageousness" element presents a question of law for the court to decide. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995) (citations omitted). "[E]xtreme and outrageous" has been described as "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Yeager*, 6 Ohio St. 3d at 374; *Meyers v. Hot Bagels Factory, Inc.*, 131 Ohio App. 3d 82 (Ohio Ct. App. 1999). Generally speaking, "discrimination, by itself, is insufficient to support an [IIED] claim." *Fuelling v. New Vision Med. Labs. LLC*, 284 F. App'x 247, 261 (6th Cir. 2008).

Here, plaintiff contends that Rossi and Wells yelled, threatened, and defamed her, continually telling others that she was insubordinate, unprofessional, young, and wild, allegedly because she did not conform to their gender stereotypes. Courts have found, as a matter of law, that discriminatory conduct far more "extreme" than the conduct alleged here does not meet the "outrageousness" standard. *See, e.g., Boggs v. Avon Prods., Inc.*, 56 Ohio App. 3d 67, 73 (Ohio Ct. App. 1990) (allegations that plaintiff's supervisor continually harassed and threatened him after he suffered an accident, knowing that such conduct would cause him anxiety, did not rise to level of "atrocious," "utterly intolerable," or "outrageous"); *Hartleip. v. McNeilab, Inc.*, 83 F.3d 767, 777 (6th Cir. 1996) (allegations that defendant threatened plaintiff's employment stability, applied pressure on her on a weekly basis to engage in conduct that she had no interest in pursuing, constantly called and wrote to her; and discussed sexual fantasies about her with other employees was insufficient to state intentional infliction of emotional distress claim) (applying Michigan law). Plaintiff has failed to state a claim for intentional infliction of emotional distress based on the conduct alleged in the complaint and, therefore, defendants' motion to dismiss plaintiff's IIED claim is granted.

### 5. *Defamation*

The second Count VIII of the complaint alleges a claim of defamation against Rossi and Wells directly and against UJC vicariously. Under Ohio law, a plaintiff alleging defamation, whether libel or slander, must show that "a defendant published defamatory and actionable statements to a third party who understood the defamatory nature of the publication." *Hout v. City of Mansfield,* 550 F. Supp. 2d 701, 747 (N.D. Ohio 2008) (citing *Cooper v. Grace Baptist Church of Columbus, Ohio, Inc.*, 81 Ohio App. 3d 728, 736 (Ohio Ct. App. 1992)). The

elements of a defamation claim include: (1) a false and defamatory statement; (2) unprivileged publication to a third party; (3) "fault amounting at least to negligence on the part of the publisher;" and (4) actionability or special harm caused by the statement. *Harris v. Bornhorst*, 513 F.3d 503, 522 (6th Cir. 2008) (quoting *Akron–Canton Waste Oil v. Safety–Kleen Oil Servs.*, 81 Ohio App. 3d 591, 601 (Ohio Ct. App. 1992)).

Defendants, relying on *Smith v. Board of Trustees Lakeland Community College*, 746 F. Supp. 2d 877, 903 (N.D. Ohio 2010), argue that the complaint should be dismissed due to lack of necessary details regarding the purportedly false and defamatory statements at issue, including what statements were made, to whom they were made, when they were made, and what about the statements were false. In *Smith*, an Ohio community college instructor alleged that the college president and the college's board of trustees, its agents and/or representatives, published written statements describing the plaintiff as "defiant," and that this description damaged plaintiff's professional reputation. *Id.* The court granted the defendants' motion to dismiss the plaintiff's defamation claim because the complaint did not allege to whom the alleged defamatory statement was made or the context in which it was made and, therefore, it could not be determined whether the statements were of actionable statements of fact rather than protected statements of opinion. 746 F. Supp. 2d at 903 (noting that pursuant to Ohio state constitution statements of opinion are protected and are thus not actionable in tort) (citations omitted).

Here, unlike the plaintiff in *Smith*, Braun has alleged facts to give context to the alleged defamatory statements. In the complaint, she alleges that: (1) Rossi and Wells spoke to most, if not all, of the captains Ms. Braun flew with and stated that she was insubordinate,

unprofessional, young, wild, and engaged in crazy actions when off the clock; (2) these statements were untrue and were made in the scope of Rossi's and Wells's employment with UJC; (3) these statements were published to other employees of UJC, and to individuals and/or companies that UJC does business with; and (4) plaintiff was damaged as a result. Thus, plaintiff has alleged the content of the allegedly false statements (i.e., that she was insubordinate and unprofessional, etc.), to whom the alleged statements were made (i.e., Braun's coworkers/supervisors and employees of companies that UJC does business with), and that these statements were made during the course and scope of Rossi's and Wells's employment. Accordingly, the Court finds that the facts alleged plausibly give rise to a defamation claim and defendants' motion to dismiss plaintiff's defamation claim is denied.

### 6. *Tortious Interference with Actual and Prospective Business Relations*

Count IX of the complaint alleges that defendants tortiously interfered with plaintiff's valid business relationship or expectancy with future employers and other clients by spreading false and defamatory statements about plaintiff. Under Ohio law, a claim for tortious interference with prospective business relations exists when: (1) a business relationship or contract existed; (2) the wrongdoer had knowledge of the relationship or contract; (3) the wrongdoer intentionally and improperly acted to "prevent a contract formation, procure a contractual breach, or terminate a business relationship"; (4) the wrongdoer has no privilege to act in this manner; and (5) damages resulted from wrongdoer's conduct. *Brookeside Ambulance v. Walker Ambulance Serv*., 112 Ohio App. 3d 150, 156 (Ohio Ct. App. 1996); *Barilla v. Patella*, 144 Ohio App. 3d 524, 532 (Ohio Ct. App. 2001).

Defendants contend that plaintiff has not alleged the involvement of a third party with whom she had an actual or prospective business relationship and, therefore, she has not stated a claim for tortious interference. The Court agrees.

Plaintiff asserts in her opposition brief that defendants have induced other employers not to hire plaintiff and that since she left UJC she has had difficulty in finding substitute employment as a direct result of the defamatory statements purportedly spread to UJC's clients. However, plaintiff does not indentify a single prospective employer with whom Braun had a relationship with, and which ended because of defendants' conduct. Moreover, contrary to plaintiff's assertions, it cannot be reasonably inferred that she had a prospective employment relationship with Signature Flight Support simply because its employees approached her and told her that Rossi was telling people she was unprofessional and insubordinate. This allegation has little or no bearing on the requisite elements of the tort. "In the absence of any allegation that a third party initiated the end of its relationship with [plaintiff] (and not vice-versa), no claim for tortious interference lies." *Collins v. Allen*, No. 1:04–CV–572, 2005 WL 1073369, at *3 (S.D. Ohio Mar. 16, 2005). Because plaintiff has failed to state a claim for tortious interference with an actual or prospective business relation, defendants' motion to dismiss this claim is granted.

*7.  Assault*

Finally, Count X of the complaint alleges a claim of assault against Rossi. The allegations of plaintiff's assault claim exactly parrot the bare elements under Ohio law, stating that Rossi intended to cause and did cause plaintiff to suffer immediate apprehension of an imminent or harmful contact. *Walsh v. Erie Cnty. Dep't of Job & Family Servs.*, 240 F. Supp. 2d

26

731, 765 (N.D. Ohio 2003) ("An assault is an unlawful offer or attempt, coupled with a present

ability, to inflict an injury upon the person of another.") (citing *Daniel v. Maxwell*, 176 Ohio St.

207, 208 (1964)). As defendant correctly argues, however, plaintiff has failed to allege any facts

to support her contention. While she alleges that "verbally assaulted," threatened, and screamed

at her for twenty minutes, she does says nothing about the content or manner of the yelling, and

there is no basis for inferring that it was physically threatening. Accordingly, defendant Rossi is

entitled to dismissal of Count X.

## III.     CONCLUSION

For the reasons set forth above, defendants' motion to dismiss is **GRANTED in**

**part**. The following claims are **DISMISSED**: Count I insofar as it alleges individual liability

against Wells and Rossi; Count II for retaliation  in violation of Title VII; Count V for negligent

hiring, retention, and/or supervision; Count VI for wrongful discharge in violation of public

policy; Count VIII for intentional infliction of emotional distress; Count IX for tortious

interference with actual and prospective business relations; and Count X for assault.

This case will proceed as to the following claims: Count I for violations of Title

VII as against UJC only; Counts III and IV for hostile work environment/gender discrimination

and retaliation in violation of Ohio Rev. Code §§ 4112.02(A), (I); Count VII for negligence; and

the second Count VII for defamation.

**IT IS SO ORDERED**.

Dated: February 19, 2013

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**