# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| CARRIE BRAUN, | ) | CASE NO.  5:12-cv-1635 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | |
| | ) | |
| ULTIMATE JETCHARTERS, INC., | ) | |
| | ) | |
| DEFENDANT. | ) | |

After a five-day trial, the jury returned a verdict in favor of plaintiff Carrie Braun ("plaintiff" or "Braun") on her state law retaliation claim, and awarded plaintiff compensatory damages of $70,250.00 and punitive damages of $100,000.00. (Doc. No. 105.) The Court subsequently awarded plaintiff $97,393.75 in attorney's fees. (Doc. No. 163 ["July 30, 2014 Mem. Op. and Order"] at 3016.)[1] The Court entered final judgment in favor of plaintiff, in accordance with the jury's verdict and the Court's award of attorney's fees, on July 30, 2014. (Doc. No. 164 ["Final J.E."].)

When plaintiff's counsel attempted to collect the judgment from defendant Ultimate Jetcharters, Inc., counsel was informed that Ultimate Jetcharters, Inc. "was closed and is out of business without assets." (Doc. No. 171-1 ["Email Letter"].) Plaintiff's counsel was further advised that Ultimate Jetcharters, Inc. "was the operating company owned by the investors from whom Ultimate Jet, LLC, (the holding company

---

[1] All page numbers are to the page identification number generated by the Court's electronic docketing system.

which owns Ultimate Jetcharters, LLC) purchased the assets of Ultimate Jetcharters, Inc. several years ago." (*Id.*) It seemed, therefore, that plaintiff had never been employed by Ultimate Jetcharters, Inc., but, instead, had been employed by Ultimate Jetcharters, LLC.[2]

This revelation prompted plaintiff to file the present motion to amend judgment. (Doc. No. 171 ["Mot. to Amend"].) Plaintiff explains that her "request is simple." (*Id.* at 3031.) She moves the Court to amend its judgment to make it enforceable against Ultimate Jetcharters, LLC and Ultimate Jet, LLC, "so that [d]efendant cannot escape judgment due to a convenient shift of assets and dissolution." (*Id.*) Ultimate Jetcharters, Inc. opposes the motion. (Doc. No. 172 ["Obj."].) The Court requested legal authority from the parties before both plaintiff and defendant sought appellate review of the Court's final judgment. (Doc. No. 175 ["Pl. Supp. Mem."]; Doc. No. 176 ["Def. Supp. Mem."].) Following a remand from the Sixth Circuit Court of Appeals with instructions to resolve the present motion to amend judgment, the Court requested and received information from defendant (Doc. No. 182), to which plaintiff filed a response (Doc. No. 184). The matter is now fully briefed.

## I.   BACKGROUND

This action has been the subject of numerous pretrial and post-trial opinions and orders, including decisions issued on February 19, 2013, July 25, 2013, and July 30, 2014. (*See* Doc. Nos. 25, 68, 163.) Familiarity with these rulings is presumed. For purposes of the present motion, it is sufficient to note that on June 24, 2012, plaintiff

---

[2] While insisting that UJC Inc. was judgment proof, counsel indicated in his letter that John Gordon, Ultimate Jetcharters, LLC's president and chief executive officer, had authorized him to advise that Ultimate Jetcharters, LLC "would fund a settlement of the Judgment which you have against Ultimate Jetcharters, Inc. if we are able to reach an agreement on an amount and terms." (Email Letter at 3033; *see also* Doc. No. 31-1 ["J. Gordon Aff."] ¶ 1.)

2

brought suit in federal court against Ultimate Jetcharters, Inc. and several individuals, claiming that her employment as a pilot had been marred by sexual harassment and gender discrimination. In her complaint, she specifically identified Ultimate Jetcharters, Inc. as her employer, and maintained that Ultimate Jetcharters, Inc. was directly responsible for violating her federal constitutional and state law rights. (*See* Doc. No. 1 ["Compl."] ¶¶ 1, 12, 23, and *see generally* ¶¶ 29-102.)

On July 16, 2012, defendants filed their answer. (Doc. No. 4 ["Ans."].) In addition to offering a general denial of the allegations in the complaint, defendants represented therein that "UJC [Inc.] was initially a corporation as alleged in paragraph #3 [of the complaint], but was converted to a limited liability company on September 28, 2010." (Ans. ¶ 3.) Based upon this unrefuted representation, it is clear that this change in legal structure occurred more than six months before plaintiff started her employment as a pilot. It is also undisputed that plaintiff did not, at any time before the Court entered its final judgment, attempt to amend the complaint to reflect Ultimate Jetcharters, Inc.'s change in legal status from a corporation to a limited liability corporation.

Defendants also filed several dispositive motions, including a motion to dismiss, under Rule 12 of the Federal Rules of Civil Procedure, and a "preliminary" motion for summary judgment under Rule 56. (Doc. No. 12 ["Mot. to Dismiss"]; Doc. No. 30 ["MSJ"].) While defendants addressed a variety of legal and factual issues in these motions, defendants never asserted that plaintiff had sued the wrong entity, that Ultimate Jetcharters, Inc. ceased to exist more than six months before plaintiff was hired as a pilot, or that Ultimate Jetcharters, Inc. was no longer a going concern.

3

Following rulings on the dispositive motions, the case proceeded to trial against Ultimate Jetcharters, Inc. on the remaining state law retaliation claim. Among the defense witnesses offered at trial was John Gordon, president of Ultimate Jetcharters, LLC. (*See* Doc. No. 31-1 ["J. Gordon Aff."] ¶ 1.) In his trial testimony, Mr. Gordon represented that he was president and CEO of "Ultimate Jetcharters" and that he had served in this capacity for this organization "[s]ince its origination in 1984." (Doc. No. 123 ["Aug. 23, 2014 Trial Tr."] at 2360.) Mr. Gordon also testified that he made the decision to discharge plaintiff and explained the reasoning that went into that decision. (*Id*. at 2409-12.)[3]

After the jury returned its verdict in favor of plaintiff and awarded her damages, the parties set about the business of filing post-trial motions. Included in the defense motions was a motion, pursuant to Rule 62(b), to stay execution of judgment. (Doc. No. 113 ["Mot. Stay Exec."].) In support of the motion, Ultimate Jetcharters, Inc. represented to the Court that it was a going concern by "ask[ing] the Court to set a nominal bond because it is a local business that has in excess of 90 employees, and there is not a serious possibility that it will move or liquidate within the time needed . . . for the Court to consider the post-trial motions." (Mot. Stay Exec. at 1180.) After the Court resolved the post-trial motions and entered final judgment in favor of plaintiff, both sides filed notices of appeal. (Doc. Nos. 165, 168.) On December 18, 2014, the Sixth Circuit remanded the matter to this Court "for the limited purpose of permitting it to rule on the

---

[3] Mr. Gordon further testified that he received input from Dave Parsons, Doug Parsons, Lori Loftis, and Rod Eby before making the ultimate decision to discharge plaintiff. (*Id*. at 2410-11.) Each of these individuals also testified at trial.

4

motions to change name/vacate the judgment." (Doc. No. 181 ["Order of Remand"] at 3124.)

## II.  LAW AND DISCUSSION

Plaintiff offers a number of bases upon which the Court's July 30, 2014 final judgment can be amended to provide that it is enforceable against Ultimate Jetcharters, LLC and Ultimate Jet, LLC, including: Rules 15(b) or 60(a) of the Federal Rules of Civil Procedure, successor liability, waiver and estoppel, and Rule 3.3 of the Ohio Rules of Professional Conduct. Because the Court finds that amendment is appropriate as to Ultimate Jetcharters, LLC under Fed. R. Civ. P. 60(a), it need not address plaintiff's alternative avenues for relief.

### A.      *Rule 60(a) Standard*

Rule 60(a) permits a trial court to "correct a clerical mistake or mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." Fed. R. Civ. P. 60(a). The Sixth Circuit has held that while Rule 60(a) exists as a mechanism by which a trial court may correct a clerical error, it may not be used to make a substantive change. *In re Walter*, 282 F.3d 434, 440 (6th Cir. 2002) (citation omitted). "The basic purpose of the rule is to authorize the court to correct errors that are mechanical in nature that arise from oversight or omission." *Id*. (quoting 11 C. Wright & A. Miller, Federal Practice and Procedure § 2854, at 240 (2d ed. 1995)).

The "distinction between 'clerical mistakes' and mistakes that cannot be corrected pursuant to Rule 60(a) is that the former consists of 'blunders in execution' whereas the latter consists of instances where the court *changes its mind. . . .*" *Hart v. Lutz*, 102 F. App'x 10, 12 (6th Cir. 2004) (quoting *Blanton v. Anzalone*, 813 F.2d 1574,

5

1577, n.2 (9th Cir. 1987)) (emphasis in original) (further citation omitted). "Stated differently, a court properly acts under Rule 60(a) when it is necessary to 'correct mistakes or oversights that cause the judgment to fail to reflect what was intended at the time of trial.'" *In re Walter*, 282 F.3d at 440-41 (quoting *Vaughter v. E. Air Lines, Inc.*, 817 F.2d 685, 689 (11th Cir. 1987)); *see Kokomo Tube Co. v. Dayton Equip. Servs. Co.*, 123 F.3d 616, 623 (7th Cir. 1997) ("In deciding whether Rule 60(a) applies, we have to distinguish between changes that implement the result intended by the court at the time the order was entered and changes that alter the original meaning to correct a legal or factual error.") (quotation marks and citation omitted), *rev'd on other grounds by McCarter v. Ret. Plan for Dist. Managers of Am. Family Ins. Grp.*, 540 F.3d 649, 653 (7th Cir. 2008).

### B.    Application of Rule 60(a)

According to plaintiff, Rule 60(a) is available to "correct misnomers in a judgment where, as here, the identity of the party plaintiff intended to sue is clear from the record and defended by the appropriate defendant." (Pl. Supp. Mem. at 3045-46, collecting cases.) In response, Ultimate Jetcharters, Inc. emphasizes that, when defendants filed their answer, they put plaintiff on notice that she had "misnamed her employer and should have amended her [c]omplaint at that time." (Def. Supp. Mem. at 3105.) It is defendants' position that plaintiff "may not . . . blame her lack of diligence prior to trial as a basis for amendment now." (*Id*. at 3106.)

A case out of the Second Circuit provides this Court with some guidance. In *Fluoro Elec. Corp. v. Branford Assoc.*, 489 F.2d 320 (2d Cir. 1973), the court reviewed a district court's decision to permit a Rule 60 amendment to the judgment to

6

correct the name of the defendant. There, the plaintiff had brought suit against "Branford Associates, a corporation." In its answer, the defendant clarified that its proper name was Branford Developers, Inc. The plaintiff ultimately secured a jury verdict against this entity, and the district court entered judgment in accordance with the verdict. When the plaintiff attempted to levy execution of judgment against "Branford Associates, a corporation," the bank refused to transmit the funds, noting that it had accounts in the names of "Branford Associates", which was a partnership, and "Branford Developers, Inc.", which was the corporation defendant identified in its answer. (As it turned out, "Branford Associates, a corporation" did not exist.)

The district court ultimately granted the plaintiff's motion to amend the judgment to reflect that it was against "Branford Associates", thereby allowing the plaintiff to levy on the assets of the partnership. *Id*. at 322. The Second Circuit affirmed, finding that "the trial court was amply justified in granting the plaintiff's motion, that the party now before us as 'Branford Associates' was the party defendant at trial, and that since then it has only persisted in technical manoeuvres by which it might avoid a lawful judgment rendered against it." *Id*. at 324.

While the defendant claimed that its answer put the plaintiff on notice that a non-existent entity had been sued, the court found that the distinction between the fictitious corporation and the existing entity "Branford Associates" was unclear from the record and that the defendant did nothing to correct this confusion, even when the trial court instructed the jury that "Branford Associates, Inc." was the defendant and the party to the contract giving rise to the litigation. *Id*. at 325. In specifically approving of the post-judgment amendment, the court also underscored the fact that one of Branford

7

Associates's  members was personally served and was the key defense witness, and that

both the nonexistent "Branford Associates, a corporation" and the existing entities shared

the same counsel. *Id*. at 324. Ultimately, the court concluded that:

> [t]o the plaintiff, to the trial judge, and to the jury it was plain that only
> one group of men had contracted with the plaintiff, a group known as
> Branford Associates. That this group was styled a corporation in the
> complaint and thereafter occasionally so referred to did not mean that the
> party sought to be charged by the plaintiff was a corporate defendant,
> regardless of name. On the contrary, under the circumstances, it is clear
> that it was Branford Associates which the plaintiff sought to hold liable,
> regardless of its legal status.

*Id*. at 325.

Though the facts in *Fluoro* are not on all fours with the facts before this

Court, the message that a judgment can be amended to reflect what occurred at trial still

rings true Here, it is evident from the complaint that plaintiff intended to bring suit

against her former employer, regardless of its legal structure. While defendants noted

plaintiff's misstep in the answer, they never attempted to correct the record beyond that

(until now) and actually contributed to the impression that plaintiff's former employer

had been properly named in the complaint. For example, in support of their summary

judgment motion, defendants specifically represented that Ultimate Jetcharters, Inc. had

been plaintiff's employer. (Doc. No. 31 ["Mem. in Supp. MSJ"] at 220.)[4] Likewise, the

parties' joint submission of stipulated facts provided that Ultimate Jetcharters, Inc. was a

---

[4] In connection with their summary judgment motion, defendants used the term "Ultimate Jetcharters" to
refer to Ultimate Jetcharters, Inc.. (*See* MSJ at 219 ["Ms. Braun filed a complaint against defendants
Ultimate Jetcharters, Inc. (hereinafter "Ultimate Jetcharters")[.]"] Defendants subsequently represented
that, "[o]n or about April 21, 2011, Ultimate Jetcharters hired Ms. Braun as a co-pilot of its airplanes." (*Id*.
at 220.)

going concern and that it had been plaintiff's employer, both of which defendants now concede, were untrue. The relevant portion of that stipulation provided:

> Ultimate Jetcharters, Inc. (known here as "Ultimate Jetcharters") was, and currently is in the business of flying cargo and charter passengers to various destinations across the United States and internationally, based out of Akron-Canton Airport. . . On or about April 21, 2011, Ultimate Jetcharters hired Ms. Braun as a co-pilot of its airplanes. . . On or about March 12, 2012, Ultimate Jetcharters terminated Ms. Braun's employment.

(Doc. No. 61 ["Proposed Final Pre-Trial Or."] at 637; *see also* Doc. No. 71 ["Stip. of Facts"] at 709.) These stipulations—identifying Ultimate Jetcharters, Inc. as plaintiff's former employer—were read to the jury at the beginning and the end of the trial. (Doc. No. 120 ["Aug. 20, 2013 Trial Tr."] at 1400-01; Aug. 23, 2013 Trial Tr. at 2562-63.)

The parties also filed joint proposed jury instructions that identified Ultimate Jetcharters, Inc. as plaintiff's former employer, and these instructions were also read to the jury. (Doc. No. 94 ["Joint Pr. Jury Inst."] at 1102.) At trial, Ultimate Jetcharters, Inc.'s witnesses—mostly current employees of Ultimate Jetcharters, LLC— did little to clarify the situation testifying, simply, that they were employed by "Ultimate Jetcharters." (*See, e.g.*, Doc. No. 121 ["Aug. 21, 2013 Trial Tr."] at 1803 [Dave Parsons], 1934 [Rodney Eby]; Aug. 23, 2013 Trial Tr. at 2315 [Lori Loftis], 2340 [Sharon Stoffer], 2356 [William Joe McGuire], 2360 [John Gordon].)

It is clear that the plaintiff, the Court, and the jury all believed that plaintiff had been employed by "Ultimate Jetcharters," the entity plaintiff sought to hold responsible for her discharge. That Ultimate Jetcharters, Inc. had been converted to the limited liability corporation Ultimate Jetcharters, LLC years before this litigation was commenced was of no consequence to the jury, and in no way changes the fact that the

jury intended to hold plaintiff's former employer liable for retaliation, regardless of the legal structure or status of the entity. Under these circumstances, the correction of the judgment to provide for liability against Ultimate Jetcharters, LLC does not represent a substantive change, but, instead, merely reflects what was intended from the inception of the case. *See In re Walter*, 282 F.3d at 441 (citation omitted); *see, e.g., Dubon v. Delmas Meat & Fish*, No. 09-20298-CIV, 2011 WL 1703179, at *1-*2 (S.D. Fla. Apr. 25, 2011) (Rule 60(a) could be used to correct misnomer); *PacifiCorp Capital, Inc. v. Hansen Properties*, 161 F.R.D. 285, 288 (S.D.N.Y. 1995) (misnomer identifying defendant as a corporation rather than a partnership could be corrected via Rule 60(a)); *see also Robinson v. Sanctuary Music*, 383 F. App'x 54, 57 (2d Cir. 2010) (approving of Rule 60(a) order correcting judgment to reflect defendant's legal name, noting that "[s]uch a misnomer may be corrected when plaintiffs did not select the wrong defendant but committed the lesser sin of mislabeling the right defendant") (quotation marks and citation omitted).

In fact, while the complaint purported to sue the no longer existing corporation of Ultimate Jetcharters, Inc., it is clear that Ultimate Jetcharters, LLC was the real party in interest and the party that defended this lawsuit. Its president and CEO, John Gordon, sat at counsel table throughout the trial. He was also a key defense witness, as he was the individual who made the ultimate decision to discharge plaintiff. Indeed, each and every individual who participated, in one way or another, in the decision to discharge plaintiff—all of whom, as it turns out, were employed by Ultimate Jetcharters, LLC— were defense witnesses at trial. Additionally, it appears that Ultimate Jetcharters, LLC is represented by McNamara, Demczyk & DeHaven, one of the law firms representing

Ultimate Jetcharters, Inc.[5] (*See* Email Letter at 3033.) Under these circumstances, to permit Ultimate Jetcharters, Inc. to roll the dice at trial and then hide behind a change in corporate structure when it comes time to collect on the judgment would make a mockery of the Court's proceedings. Thus, the Court shall amend its final judgment to provide that it is against Ultimate Jetcharters, LLC.

While the decision to amend the judgment as to Ultimate Jetcharters, LLC represents a very close call due to plaintiff's failure to correct the defendant's name after being put on notice in the defendants' answer, the Court finds that the unique facts of the present case support such an amendment. In fact, had Ultimate Jetcharters, LLC not repeatedly reinforced the misperception that plaintiff's employer had been properly named and had it not been clear that Ultimate Jetcharters, LLC was afforded its day in court, a very different outcome could have resulted. Indeed, the Court recognizes that a reviewing court could, even on the present facts, reach a different result. Still, this Court concludes that the case unfolded in such a way that amendment of the judgment as to Ultimate Jetcharters, LLC is proper.

The record does not, however, support an amendment to provide for liability against Ultimate Jetcharters, LLC's parent corporation, Ultimate Jet, LLC. "A parent corporation generally is not liable for the acts of its subsidiary, even if its subsidiary is wholly owned." *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 724 (6th Cir. 2007) (citing, among authorities, *United States v. Bestfoods*, 524 U.S. 51, 61, 118 S. Ct. 1876, 141 L. Ed. 2d 43 (1998)). "However, in extraordinary cases, such as the corporate

---

[5] Lead defense counsel at trial, Sidney Freeman, serves in an "of counsel" capacity with the firm. (*See* Email Letter at 3033.)

11

form being used for wrongful purposes, courts will pierce the corporate veil and disregard the corporate entity, treating the parent corporation and its subsidiary as a single entity." *Id.* (citing *Bestfoods*, 524 U.S. at 62.)

Under Ohio law, a court may pierce the corporate veil of a parent corporation, and provide that it is liable for the actions of its subsidiary if: (1) the parent exercised complete control over the subsidiary; (2) that its exercise of control amounted to fraud; and (3) the plaintiff was injured by such control. *Id.* (quoting *Belvedere Condominium Unit Owners' Ass'n v. R.E. Roark Cos*., 617 N.E.2d 1075, 1077 (Ohio 1993)) (further citation omitted). As the party seeking to impose liability on the parent corporation, the burden is on plaintiff to demonstrate grounds to support a piercing of the corporate veil. *LeRoux's Billyle Supper Club v. Ma*, 602 N.E.2d 685, 689 (Ohio Ct. App. 1991).

The record reflects that Ultimate Jet, LLC was formed in 2010, for the purpose of purchasing Ultimate Jetcharters Acquisition, Inc., the holding company that owned UJC, Inc. (Doc. No. 182 ["Notice of Filing Aff. of J. Gordon"] at 3125-26.) Ultimate Jet, LLC's membership interests are owned by two limited liability corporations: Wooster Ohio Investments, LLC, owning 91.3% of the ownership interests; and Minnesota Airventures, LLC, owning 8.7% of the ownership interests. (*Id*. at 3127.) While John Gordon owns the largest interest in Wooster Ohio Investments, LLC at 35.22%, eleven other members own interests in this limited liability corporation, and the two corporations owning Ultimate Jet, LLC have no members in common. (*Id*.)

Plaintiff has failed to demonstrate that Ultimate Jet, LLC exercised such complete control over Ultimate Jetcharters, LLC that the subsidiary had "no separate

mind, will, or existence of its own." *Corrigan*, 478 F.3d at 724 (quotation marks and citation omitted). For example, there is no evidence that corporate formalities have been ignored, that the parent has held itself out as liable for the subsidiary, or that the subsidiary was grossly inadequately capitalized or a mere façade for the parent's operations. *Id.* (citing *LeRoux's Billyle*, 602 N.E.2d at 689); (*see* Notice of Filing J. Gordon Aff. at 3125 [Ultimate Jetcharters, LLC purchase by Ultimate Jet, LLC for $12,000,000.00].) Absent such evidence, the Court may not pierce the corporate veil and reach the parent corporation.[6]

Finally, even though the Court finds that it can amend the judgment to correct the misnomer as to Ultimate Jetcharters, LLC, it would be remiss if it did not acknowledge that plaintiff should have, as Ultimate Jetcharters, Inc. suggested, sought to amend her complaint immediately after defendants filed their answer. Plaintiff was put on notice early in this litigation that she had misnamed her former employer. In a prior opinion, the Court reduced plaintiff's request for attorney's fees based, in part, on the inexperience of her trial counsel, and the fact that counsel's lack of experience had led to certain questionable decisions in this litigation. (*See* July 30, 2014 Mem. Op. and Order.) The present motion to amend highlights another. More seasoned counsel would have recognized the dangers of misidentifying a party in the pleadings and taken immediate corrective action. Had the circumstances been otherwise, counsel's delay in seeking to amend could have negated years of litigation, and might have left their client with a time-

---

[6] The only evidence plaintiff offers with respect to Ultimate Jet LLC demonstrates that this corporation identified John Gordon as its statutory agent. (Doc. No. 184-4 [Corporate Details filed with Ohio Secretary of State] at 3172.) This fact, alone, does not warrant piercing the corporate veil.

barred retaliation claim.

### III. CONCLUSION

        For all of the foregoing reasons, plaintiff's motion to amend (Doc. No. 171) is GRANTED IN PART. The Court shall file an amended final judgment that provides that judgment is against Ultimate Jetcharters, LLC.

        **IT IS SO ORDERED**.

Dated: March 31, 2015

                                         **HONORABLE SARA LIOI**
                                         **UNITED STATES DISTRICT JUDGE**